OPINION
Appellant Robert Combs appeals a judgment of the Stark County Common Pleas Court convicting him of two counts of felonious assault (R.C.2903.11(A)(1)):
ASSIGNMENTS OF ERROR
 I. THE APPELLANT WAS DENIED A FAIR TRIAL IN VIOLATION OF THE UNITED STATES AND OHIO CONSTITUTIONS DUE TO THE INEFFECTIVE REPRESENTATION OF TRIAL COUNSEL.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SUSTAIN APPELLANT'S MOTION FOR A MISTRIAL AND GRANTING APPELLANT A NEW TRIAL DUE TO THE IMPROPER ADMISSION OF EVIDENCE FOR CONSIDERATION BY THE JURY IN THEIR DELIBERATIONS.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY FINDING APPELLANT GUILTY OF FELONIOUS ASSAULT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING THE APPELLANT IN VIOLATION OF PURPOSES AND PRINCIPLES OF SENTENCING AS SET FORTH IN OHIO REVISED CODE SECTIONS 2929.11 THROUGH 2929.13.
Michael O'Bravac arrived at Harmon's Pub sometime after 10:00 p.m. on December 23, 2000. During the evening, O'Bravac began talking to Kristen Downing. In 1982, O'Bravac played football with Cincinnati Bengals, and had played against Downing's father, who played for the San Francisco Forty-niners, in the Super Bowl.
During the evening, appellant also began talking to Downing. An argument ensued between O'Bravac and appellant. The bartender broke up the confrontation between the two men, telling them it was nearly closing time, and it was Christmas. He advised them to break it up and go home. Appellant left the bar.
Five to ten minutes after appellant left the bar, O'Bravac left. He walked out of the bar directly behind Sarah Lance, another patron at the bar. After walking through the two outer doors of the bar, O'Bravac immediately took two blows to the back of his head, and fell to the ground. He saw appellant hitting him. He guessed that appellant swung a tire iron at him about twenty times. O'Bravac attempted to block appellant's blows with his arms, but could not stop appellant from hitting him with the tire iron. O'Bravac was later treated at the hospital as a result of his injuries. He needed 24 stitches to close a wound on the front of his head, and 12 to 16 stitches to close a wound on the side of his head. The attack resulted in four permanent scars on his head, and a concussion.
James Fye, who was the disc jockey at the bar that evening, packed up his equipment, and heard there was a fight going on in the parking lot. The next thing he remembered, he was sitting inside the bar, bleeding, and there was blood on his sweater. Fye was also treated at Mercy Medical Center as a result of the attack. He suffered a laceration to the head which required 18 stitches to close, a chip fracture to his ankle, and a concussion.
As Sarah Lance exited the bar in front of O'Bravac, she saw appellant approaching O'Bravac, holding a gray pipe in his hand. She told appellant, "If you are going to it, don't do that in front of me." However, appellant walked past her toward O'Bravac, and began swinging the object overhead. Appellant hit O'Bravac on the head with the pipe. As people began coming out of the bar, appellant stopped hitting O'Bravac. He walked away and hit a street sign with the pipe. When Lance returned to the scene of the attack, she noticed Fye lying on the ground.
Appellant was indicted by the Stark County Grand Jury on two counts of felonious assault. The case proceeded to jury trial.
At trial, appellant testified that he was sitting in the bar on the night in question talking to Kristen Downing. He claimed that O'Bravac came over and was bothering Downing, at which point he told O'Bravac to back off. Appellant claimed that O'Bravac then told him he would put his foot in the back of appellant's throat. Appellant claimed that the bartender came over and told him that no fights were going to happen at the bar that night. Appellant claimed he was mad, but calm, and was just trying to tell O'Bravac to back off. He then left the bar, and waited for his friend, David Kennedy, in the parking lot.
According to appellant, O'Bravac came out of the bar before Kennedy. Appellant claimed that O'Bravac walked toward him, while he backed up in an attempt to get into his van. When he got to the van, appellant testified that O'Bravac was on top of him. Appellant testified that he opened the door and grabbed a tire iron because he did not have time to get inside the van. Appellant testified that he hit O'Bravac with the tire iron, and he fell to the ground. He then hit Fye, who he saw out of the corner of his eye, exiting the bar. He testified that he hit appellant again, backed away from the door while facing it, and got in the van with the two friends with whom he had arrived at the bar.
Appellant was convicted as charged. He was sentenced to three years incarceration on each count, to be served consecutively.
After the jury returned with its verdict, appellant made an oral motion for a mistrial. He thereafter filed a motion for a new trial. Both motions concerned actions taken by the jury, who moved a dry erase board, used for demonstrative purposes during the trial, into the jury room during deliberations. The trial court denied both the mistrial and new trial motions.
 I
In his first assignment of error, appellant claims that his trial counsel was ineffective for failing to request an instruction on the inferior degree offense of aggravated assault.
To demonstrate ineffective assistance of counsel, a defendant must show counsel's performance fell below an objective standard of reasonable representation, and prejudiced his defense. Strickland v. Washington
(1984), 466, 668; State v. Bradley (1989), 42 Ohio St.3d 136, cert.denied (1990), 497 U.S. 1011. To demonstrate prejudice, the defendant must show that but for counsel's errors, the result of the proceedings would have been different. Id.
An offense is an inferior degree of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements. State v. Deem
(1988), 40 Ohio St.3d 205, paragraph two of the syllabus. Aggravated assault is an inferior degree offense of felonious assault, because the elements of the two crimes are identical, except that aggravated assault contains the additional mitigating element of serious provocation. Id. at 210-211. If a defendant is charged with felonious assault, and presents sufficient evidence of serious provocation, the defendant is entitled to an instruction on aggravated assault. Id. at paragraph four of the syllabus. To be serious, the provocation must bring on extreme stress and be reasonably sufficient to incite the defendant into using deadly force. Id. at paragraph 5 of the syllabus.
In the instant case, appellant failed to provide sufficient evidence of serious provocation to support an instruction on aggravated assault. Any physical altercation between appellant and O'Bravac before the incident in the parking lot was slight at best, and appellant had no prior altercation with Fye. Appellant and O'Bravac had a brief verbal exchange in the bar. According to appellant's own testimony, he was not overly upset when he left the bar. According to appellant's testimony, he struck O'Bravac because O'Bravac pursued him into the parking lot, and he feared for his safety. As to Fye, appellant testified that he struck him because he mistakenly believed he was coming out of the bar to assist O'Bravac. Appellant has not demonstrated that had counsel requested an instruction on aggravated assault, the court would have given the instruction, and that he would have been acquitted of felonious assault and convicted of aggravated assault.Further, the failure to request an instruction on a lesser offense is a matter of trial strategy, and does not establish ineffective assistance of counsel. State v. Boone
(December 28, 2001), Stark Appellate No. 2001CA00167, unreported. Counsel in the instant case chose to pursue a defense of self-defense, in an attempt to gain a complete acquittal for his client. The defense of self-defense meshed well with appellant's testimony that he was afraid of O'Bravac, and struck him out of fear for his safety.
The first assignment of error is overruled.
 II
Appellant argues the court erred in overruling his motion for a mistrial and his motion for a new trial, on the basis that the jury improperly considered the information drawn on the dry erase board, which was not admitted into evidence.
During the questioning of Sarah Lance, the State's first witness, she drew a rough diagram to illustrate the layout of both the inside and outside of Harmon's Pub. The prosecutor and defense counsel marked the board in response to answers of several witnesses during the trial. The markings demonstrated the layout of the bar, as well as the location of appellant, the victims, and the witnesses during the course of the attack. Although the drawings on the board were not to scale, the record does not indicate they were inaccurate, confusing, or misleading, and neither party objected to the markings.
During the course of its deliberations, a juror entered the courtroom, where the court's bailiff was seated. The juror indicated that the jury needed the dry erase board. The juror began to push the board into the jury room, requiring some assistance from the bailiff.
After the jury reached its verdict, the trial court discovered for the first time that the dry erase board was in the jury room, and informed the parties. The board appeared to be in the same condition as when it was last drawn on during the presentation of evidence.
Appellant moved for a mistrial and a new trial based on Crim.R. 33, which provides in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; . . .
 (E) Invalid grounds for new trial. No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
 (5) Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial.
The State concedes that the presence of the dry erase board in the jury room without any discussion as to its admissibility was error. However, the State argues that the error in the instant case was an irregularity in the proceedings, and not misconduct of the jury, and appellant has not demonstrated that the error prevented him from having a fair trial.
The jury is obligated to decide a case solely on the evidence, and any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, and any independent inquiry or experiment by a juror concerning the evidence or the law, constitutes juror misconduct. State v. Taylor (1991), 73 Ohio App.3d 827,831. Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct. Id.
In the instant case, the jury obtained the dry erase board under the supervision and assistance of the court bailiff. The board was not taken surreptitiously as part of an independent inquiry by the jury, and was not the result of any communication or contact with one of the parties to the litigation. Thus, the error in the instant case is more appropriately defined as an irregularity in the proceedings, and appellant must demonstrate that the error prevented him from having a fair trial.
In a case analogous to the instant case, the Ninth District affirmed a verdict where the trial court sent a blackboard containing a diagram into the jury room during deliberations, without notifying counsel. State v.Weaver (November 21, 1984), Summit Appellate No. 11700, unreported. In that case, the defendant was convicted of aggravated murder with a firearm specification. During trial, a diagram on a blackboard was used as a demonstrative tool by several witnesses during their testimony. During deliberations, the jury requested to see the blackboard. The court granted the request without notifying the attorneys, and the blackboard was sent into the jury without any discussion of its admissibility by the parties. The court of appeals found no abuse of discretion, concluding that while not expressly admitted as an exhibit, the diagram was not ruled inadmissible, and had been used merely as a demonstrative aid by the witnesses during their testimony. Id. There was nothing in the record to indicate that the diagram was inaccurate, confusing, or misleading. Id.
In the instant case, the evidence and all the testimony relating to the drawings on the board was admitted. There was nothing in the record to indicate that the board contained any writing that was inaccurate, confusing, or misleading. The jury had viewed the contents of the board over a two day period during the presentation of evidence, and the jurors were permitted to take notes during the case. The contents of the board were merely cumulative of the testimony of the witnesses. Appellant has not demonstrated that he was denied a fair trial by the presence of the board in the jury room.
The second assignment of error is overruled.
 III
Appellant argues that his conviction was not supported by sufficient, credible evidence, and that the jury's verdict was against the manifest weight of the evidence. Appellant specifically claims there was insufficient evidence of use of a deadly weapon or of serious physical harm to the victims.
The legal concepts of sufficiency and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Sufficiency is a term of art meaning the legal standard applied to determine whether the case may go to the jury, or whether the evidence is legally sufficient to support the verdict as a matter of law. Id. Sufficiency is a test of adequacy, and whether the evidence is legally sufficient to sustain a verdict is a question of law. Id.
When a court of appeals reverses a judgment on the basis that the verdict is against the weight of the evidence, the court sits as a thirteenth juror, and disagrees with the fact finder's resolution of conflicting testimony. Id. at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
Appellant was convicted of two counts of felonious assault. The jury thus had to determine that appellant knowingly caused serious physical harm to O'Bravac and Fye. The Ohio Revised Code defines serious physical harm as harm that involves permanent incapacity or a temporary, substantial incapacity; permanent disfigurement or serious temporary disfigurement; or acute pain which results in substantial suffering or prolonged intolerable pain. R.C. 2901.01 (E).
In the instant case, the victims suffered permanent scarring as a result of the attack. Fye was knocked unconscious, and both suffered concussions. There was sufficient evidence of serious physical harm to support the jury's verdict.
Further, there is evidence to support the finding that appellant did not act in self-defense. While appellant testified that he feared for his safety, O'Bravac and Lance both testified that appellant struck O'Bravac immediately when he exited the bar. There was evidence that appellant stood over O'Bravac after he fell to the ground, and swung a tire iron at his head. Fye was hit simply because he exited the bar shortly after O'Bravac. The jury's verdict is not against the manifest weight or sufficiency of the evidence.
The third assignment of error is overruled.
 IV
Appellant argues that the court erred in sentencing him to incarceration rather than community control, and further argues that the court should not have imposed consecutive sentences.
Pursuant to R.C. 2929.13 (D), there was a presumption in favor of prison for the underlying convictions. However, pursuant to the statute, appellant could demonstrate that community control would adequately punish him and would not demean the seriousness of the offense.
As appellant had not previously served a prison term, R.C. 2929.14 (B) would guide the sentencing court to impose the lowest prison term, which would be two years in the instant case. However, the court may impose the greatest term if it finds that the shortest prison term will demean the seriousness of the offense, or would not adequately protect the public from future crimes by a defendant.
In addition, in order to impose consecutive terms, the court had to find that the consecutive service is necessary to protect the public from future crime or punish the offender, and the consecutive sentences are not disproportionate to the seriousness of the conduct and to the danger the offender poses to the public. R.C. 2929.14 (E)(4). The court must also find that the harm caused by the multiple offenses was so great that a single prison term would not adequately reflect the seriousness of the conduct, or that the offender's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crime. Id.
At the sentencing hearing, appellant presented 11 letters from various sources attesting to his character. He further indicated his remorse for the injuries that occurred, but maintained that he still believed he was acting in self-defense.
In response, the prosecution indicated that both victims suffered serious injuries requiring hospitalization. She further noted that the injuries were to the head, a vulnerable body part. There was permanent scarring, and Mr. Fye suffered from nervousness and stress each time he exited a building. He had permanent pain in his ankle due to the chipped bone. O'Bravac did not have health insurance, and both victims suffered financial loss as a result of the injuries. The prosecutor thus argued that anything less than a prison term would demean the seriousness of the offense.
In its judgment entry, the court upheld the presumption in favor of a prison term, and found that the shortest prison term would demean the seriousness of the offense. The court further found the consecutive sentences were necessary to protect the public from future conduct, and to punish the defendant. The court made a finding that consecutive sentences were not disproportionate to the seriousness of the offense, and the danger possessed by appellant. The court specifically stated that it considered the record, the oral statements of counsel, the oral statement of appellant, the 11 letters submitted on appellant's behalf, and the photos and the medical records admitted into evidence. The court stated on the record at the sentencing hearing that the harm caused by the multiple offenses was so great or unusual that a single prison term for any of the offenses would not adequately reflect the seriousness of appellant's conduct.
Appellant had not demonstrated that the court erred in sentencing him to two three-year terms of incarceration, to be served consecutively.
The fourth assignment of error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.
By Gwin, J., Hoffman, P.J., and Edwards, J., concur.